IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


STEVEN DAUDA                                                    PLAINTIFF


V.                              NO. 10-5049


MICHAEL ASTRUE,
Commissioner of the Social Security Administration              DEFENDANT


## MEMORANDUM OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a

decision of the Commissioner of the Social Security Administration (Commissioner) denying

his claims for a period of disability and disability insurance benefits (DIB) and supplemental

security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security

Act (Act). In this judicial review, the Court must determine whether there is substantial evidence

in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on October 31, 2006,

alleging an inability to work since September 20, 2004, due to diabetes, depression, pain in his

hip, shoulders and back, diabetic neuropathy, neck stiffness, dizziness, episodes of losing

consciousness, episodes of sleeping for days, poor concentration, confusion, drowsiness, fatigue,

limited mobility, and trouble using his hands. (Tr. 152). An administrative hearing was held on

August 31, 2009, at which Plaintiff appeared with counsel and testified.  (Tr. 9-30).

By written decision dated September 28, 2009, the ALJ found that Plaintiff had an impairment or combination of impairments that were severe - diabetes mellitus, back disorder, and mood disorder.  (Tr. 40).  However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 40).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> occasionally lift/carry 20 pounds and frequently 10 pounds.  He can sit for 6 hours and can stand/walk for 6 hours.  He can frequently climb stairs and ramps, balance, stoop, crouch, crawl, and kneel.  He can occasionally climb ladders and scaffolds.  He has moderate difficulties in maintaining daily activities, social functioning, and concentration, persistence, and pace.  He has moderate limitations in understanding, remembering, and carrying out detailed instructions, appropriately responding to usual work situations and routine work changes, and appropriately interacting with supervisors, co-workers, and the public.  Moderately limited means there is more than a slight limitation, but the person can perform in a satisfactory manner.  He can do work where interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote, with few variables and little judgment required.  Supervision is simple, direct, and concrete.

(Tr. 42).  With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform other work, in housekeeping and meat processing, and as a hand packager.  (Tr. 46).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on January 19, 2010.  (Tr. 1-3).  Subsequently, Plaintiff filed this action. (Doc.1).  This case is before the undersigned pursuant to the consent of the parties.  (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision.  (Docs. 9, 10).

**II.  Evidence Presented:**

Plaintiff was born in 1961 and received his GED.  (Tr. 148, 157).  Plaintiff was diagnosed

-2-

with Diabetes Mellitus, Type 2, sometime in 2002, and the medical records reflect that on April 1, 2005, he was admitted to the Veteran's Administration Hospital (VA) in New Jersey for pancreatitis, due to elevated triglycerides and alcohol use. (Tr. 306, 385). He was directly admitted to ICU, with intubation, where he remained for three weeks. (Tr. 386). At that time, the record reflects that Plaintiff was "apparently non-compliant with his diabetes medications." (Tr. 296).

Subsequent to his hospital stay, on June 9, 2005, Plaintiff presented to the VA for physiatric evaluation for a wellness program. (Tr. 379). At that time, he reported that he had been previously hit by a car as a pedestrian and fended off the blow with his right arm, and had pain in his right shoulder from defending himself. (Tr. 379). He had some residual upper-mid back pain and shoulder pain, which he rated 5-6 on average, and 6-8 at worst. He was seen at Raritan Bay Medical Center for his shoulder, and was told he suffered a deep muscle contusion. (Tr. 379). The VA assessed him with musculoskeletal neck and upper back pain; adhesive capsulitis[1] right shoulder; and general deconditioning.[2] (Tr. 382). Clinical exam revealed that Plaintiff had decreased passive and active range of motion, especially with external rotation, and was ordered a course of therapy for the shoulder, to maximize range of motion. (Tr. 360). On June 21, 2005, a VA progress note revealed that Plaintiff's neck and upper back pain interfered with the efficient performance of life tasks, and that he would benefit from occupational therapy

---

[1] Adhesive capsulitis - Adhesive inflammation between the joint capsule and the peripheral articular cartilage of the shoulder with obliteration of the sub-deltoid bursa, characterized by shoulder pain of gradual onset, with increasing pain stiffness, and limitation of motion. Dorland's Illustrated Medical Dictionary 290 (31st ed. 2007).

[2] Deconditioning - A change in cardiovascular functioning after prolonged periods of weightlessness, probably related to a shift of a quantity of blood from the lower limbs to the thorax, resulting in reflex diuresis and a reduction of blood volume. Id. at 483.

to decrease the pain, to increase pain free active range of motion, and to improve the function of his shoulders.  (Tr. 354).

Plaintiff began occupational therapy, and on July 14, 2005, reported that it was helping to decrease his upper extremity symptoms, and he wanted to continue.  (Tr. 345).  However, on August 2, 2006, Plaintiff was reported as not attending therapy since July 7, 2005, and had cancelled or did not show up for all appointments since then.  (Tr. 342).  Plaintiff called in late July and advised that he was having transportation difficulties, but would definitely attend on August 2, 2005.  However, he did not show up on August 2, 2005.  (Tr. 342).

Beginning in 2006, and continuing thereafter, Plaintiff's Diabetes Mellitus was consistently poorly controlled.  (Tr. 234, 251, 260, 279, 413, 417, 420, 424, 428, 456, 651, 684, 707, 716, 734, 749).  On April 5, 2006, Plaintiff was diagnosed with NIDDM (non-insulin dependent diabetes) with nephropathy[3] - not controlled, and was advised of the importance of taking his medications as prescribed.  He was also counseled about smoking cessation (Plaintiff reported on September 1, 2006 that he smoked one pack per day), and the effects that smoking had on the body, the long term effects of continued use, the benefits of smoking cessation, and alternative ways of smoking cessation.  (Tr. 251).  On September 1, 2006, Plaintiff was assessed by the VA with:

1. NIDDM with nephropathy - uncontrolled.
2. Hypertriglyceridemia[4]
3. Tobacco use disorder
4. Rhinitis
5. Reflux/abdominal discomfort/tubular adenoma

---

[3]Nephropathy - Any disease of the kidneys.  Id. at 1261.

[4]Hypertriglyceridemia - Excessive triglycerides in the blood.  Id. at 910.

    6.  Depression
    7.  Pt is hypotensive[5]
    8.  Tachycardia - has no cardiac sx.
    9.  Dizziness may be related to hypotension
    10.  Joint pains

(Tr. 234).  Plaintiff was not believed to have PTSD (post traumatic stress disorder).  (Tr. 235).

On September 21, 2006, John W. Williams, M.D., attending psychiatrist at the VA, met with Plaintiff.  Plaintiff reported to Dr. Williams that he had signs of depression for the previous six months, with depressed mood and poor concentration.  (Tr. 227).  Plaintiff reported that he was angry at his father due to his father's negative attitude, and was angry with his sister due to her financial abuse of his parents.  (Tr. 227).  Plaintiff reported that he had heavy substance abuse in the past - cannabis, cocaine (daily use), and hashish, but had been abstinent for seven years.  (Tr. 227).  Plaintiff was assessed by Dr. Williams with Dysthymic Disorder, Personality Disorder NEC, Cocaine Dependence, Opiate Abuse, and ETOH (alcohol) abuse, and was given a GAF Score of 50.  Dr. Williams began Plaintiff on a trial of Celexa.  (Tr. 228).  On October 6, 2006, Plaintiff's medications were: Citalopram; Enalapril; Hydrocortisone Acetate; Insulin, Aspart; Loratadine; Omeprazole; Precision xtra; and Psyllium SF oral.  (Tr. 224).

On November 30, 2006, Plaintiff reported that he had "continued with the medication" which he reported had helped him remain stable, and he was given a GAF Score of 60.  (Tr. 221).  Plaintiff also reported that the level of pain he was experiencing was acceptable.  (Tr. 221).

On January 31, 2007, a Psychiatric Review Technique form was completed by Robert

---

[5]Hypotensive - 1.  Characterized by or causing diminished tension or pressure, as abnormally low blood pressure.  2.  A person with abnormally low blood pressure.  Id. at 919.

Eckardt. (Tr. 262-276). However, since Plaintiff did not return certain forms, his functioning could not be reliably assessed, based upon insufficient evidence. (Tr. 274).

Also on January 31, 2007, Plaintiff was hospitalized at the VA with Hyperglycemia, Hypertriglyceridemia, Headache, and ARF (acute renal failure). (Tr. 413). He reported that he had a cholecystectomy in May of 2005 and after that, he felt some fullness in his stomach after meals, which was worsening. Over the previous six months, he felt that he could eat until he felt full, but if he ate or drank more, he began to vomit. He also reported that he felt sometimes depressed, and would lie in bed without food and medications for a few days. (Tr. 413). He reported he was taking Celexa for his depression. (Tr. 413). A brain CT scan was done, which revealed no acute intracranial hemorrhages. (Tr. 416). He was diagnosed with uncontrolled Diabetes Mellitus, Gatroparesis,[6] Hypertrigliceridemia/dyslipidemia, PTSD (post traumatic stress disorder), and Migraine. (Tr. 420). Plaintiff also admitted to non-compliance with anti-depressant medication, as well as with his diet and insulin. (Tr. 456-457). At that time, he appeared "highly distractible and concentration appears mildly impaired." (Tr. 457).

A Mental Health Consult was conducted on February 1, 2007. (Tr. 430). Plaintiff reported a history of depression since 1986, and was more recently feeling out of control and hopeless at times. He had been taking Citalopram 40 mg. with moderate benefit, but still desired more relief from sadness and anger. (Tr. 430). Plaintiff emphasized that a key factor in his weak compliance with medical care entailed lack of reliable transportation to the Medical Center. (Tr. 431). He stated that he could obtain rides through the county/VA agencies, but had to give

---

[6]Gastroparesis - Paralysis of the stomach, usually from damage to its nerve supply, so that food empties out much more slowly, if at all. Symptoms include early satiety, nausea and vomiting. Called also gastroparalysis and gastroplegia. Id. at 776.

advance notice of at least three days, although he could only schedule clinic appointments one day in advance per VA policy.  (Tr. 431).

On February 2, 2007, Plaintiff presented to the VA with "anorexia and fatigue and was found to have TG (triglyceride) level more than 10,000." (Tr. 423).  Plaintiff's Diabetes Mellitus was reported as still not controlled.  (Tr. 424).  Plaintiff was diagnosed with:

1. Headache
2. Uncontrolled DM
3. Dysphagia
4. Hypertriglyceridemia
5. PTSD
7. Prophylaxis

(Tr. 427-428).

On August 1, 2007, Anna Marie Resnikoff, Ph.D., a psychologist, evaluated Plaintiff. She diagnosed Plaintiff with:

| | |
|---|---|
| Axis I: | Major depressive disorder recurrent |
| Axis II: | Deferred |
| Axis III: | High cholesterol type 2 and insulin dependent diabetes, history of pancreatitis. |
| Axis IV: | Psychosocial stressors include history of pancreatitis, history of unemployment, history of lack of consistent psychotherapy. |
| Axis V: | GAF present: 65, past 65-76. |

(Tr. 521).

On August 20, 2007, Salvator Milazzo, D.O., saw Plaintiff for an orthopedic evaluation. Dr. Milazzo reported that Plaintiff had, upon examination, functional range of motion of his neck and lumbosacral spine with note of muscular tightness, sacroiliac dysfunction, right hamstrings, shoulder crepitus, and had functional motion and good strength throughout the upper and lower extremities, without any signs of radiculopathy.  (Tr. 525).  That same day, a Passive Range of

-7-

Motion Chart was completed, which reported as follows:

> Can the hand be fully extended?   Yes - with both hands
> Can a fist be made?  Yes- with both hands
> Can the fingers be opposed?  Yes- with both hands
> Can the claimant separate papers?  Yes
> Can the claimant button buttons?  Yes
> Grip Strength (5 is normal) - Left - 5; Right - 5
> Pinch Strength - Left - 5; Right - 5
> Able to Squat ? Yes
> Walk on heels?  Yes
> Walk on toes?  Yes
> Muscle weakness (5 normal) - right - 5; left - 5
> Can the claimant walk at reasonable pace?  Yes
> Does the claimant use a hand-held assistive device?  No

(Tr. 526-527).  Also on that same day, Plaintiff was found to have scoliosis.[7]  (Tr. 528).

A Physical RFC Assessment was completed by non-examining physician, Dr. Deogracias

Bustos.  (Tr. 529-536).  In the assessment, Dr. Bustos found that Plaintiff could :

> occasionally lift and/or carry (including upward pulling) 20 pounds; frequently lift and/or carry (including upward pulling) 10 pounds; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry.

(Tr. 530).  Dr. Bustos further found that Plaintiff could:  frequently climb ramp/stairs; never

climb ladder/rope/scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. (Tr. 531).

He also found that Plaintiff had no manipulative, visual, communicative or environmental

limitations. (Tr. 531-533).  Dr. Bustos stated that the degree of alleged difficulties were not fully

supported by the medical evidence of record.  (Tr. 534).

On September 12, 2007, psychologist Jane Shapiro completed a Psychiatric Review

Technique form. (Tr. 543-556).  Shapiro found that Plaintiff had a moderate degree of limitation

---

[7]Scoliosis - An appreciable lateral deviation in the normally straight vertical line of the spine.  Id. at 1706.

in:  restriction of activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace;  and one or two episodes of decompensation, each of extended duration.  (Tr. 553).  Shapiro also completed a Mental RFC Assessment on September 12, 2007, where she found Plaintiff was not significantly limited in 14 out of 20 categories, and moderately limited in 6 out of 20 categories.  (Tr. 557-558).  She noted that Plaintiff had been seen in the outpatient clinic for treatment of Dysthymic Disorder and had been prescribed medication, with some positive effect.  Plaintiff's mood was reported as depressed and anxious, and his IQ was estimated in the low average range.  He was diagnosed with Major Depression Disorder.  (Tr. 559).  Shapiro concluded that Plaintiff was able to understand, remember and execute instructions, attend and concentrate and adapt to routine changes in a work setting, and respond appropriately to supervision.  (Tr. 559).

In a September 25, 2008 VA Progress Note, Plaintiff's hypertension was reported as under fair control, and his hypertriglyceridemia was reported as controlled on gemfibrozil.  (Tr. 799).  With respect to his Diabetes Mellitus, it was noted that "hemoglobin Alc" would be added, and he was to continue insulin.  As to his Depressive Disorder NOS - it was noted that he would be referred to mental health for further treatment with Citalopram, Quetiapine and Trazodone.  (Tr. 799).  Plaintiff reported no acute pain, but did report chronic pain in all large joints.  However, he did not desire the pain to be addressed, reported being satisfied with pain medications, and declined medication adjustments or other pain management interventions.  (Tr. 805).

On October 14, 2008, Plaintiff advised the VA in Arkansas that he recently moved there and currently lived at the Salvation Army in Bentonville, Arkansas.  (Tr. 602).  He reported

being clean and sober from all drugs "for the last ten years." (Tr. 602). He advised that he was treated for depression, and confirmed the medications listed in his record. He related that the medications were most helpful, and that he was feeling good and sleeping well. (Tr. 602). He denied any suicidal or homicidal ideations. His attention and concentration appeared within normal limits and his insight and judgment were adequate for self-care. His overall manner was noted as positive, and he appeared a good candidate to refer to the Compensation Work Treatment (CWT) program at the VA. (Tr. 602).

On October 16, 2008, Michael L. Johnson, a clinical social worker for the VA, diagnosed Plaintiff with:

| | |
|---|---|
| Axis I | Depression, nos |
| Axis II | Deferred |
| Axis III | See problem list |
| Axis IV | Lack of finances, family difficulties, homeless, recent relocation to NWA |
| Axis V | 48 |

(Tr. 783).

On November 14, 2008, Plaintiff reported no acute or chronic pain, and stated that he had been taking insulin before meals, after meals, or at bedtime "just whenever." (Tr. 760). It was reported that his diabetic program was very erratic. (Tr. 760). On November 20, 2008, Michael L. Johnson again gave Plaintiff a GAF Score of 48. (Tr. 758).

On December 12, 2008, Plaintiff was seen by Dr. Richard Heckmann, a psychiatrist. Dr. Heckmann assessed Plaintiff as follows:

| | |
|---|---|
| Axis I | Depression NOS; ptss/subsyndromal. Cannot r/o bipolar NOS. |
| Axis II | Deferred |

-10-

| | |
|---|---|
| Axis III | NKDA;[8] NIDDM/HTN/High Lipids; DJD/back pain |
| Axis IV | 3-moderate-pain/relocation |
| Axis V | 56 in 12 months; 56 now |

(Tr. 754).

On December 15, 2008, Plaintiff stated that he varied the insulin dose according to how he felt, and had not taken any insulin for two days.  (Tr. 749).  He was assessed as being in poor compliance with the diabetic program.  (Tr. 749).

On February 10, 2009, Plaintiff complained to the VA of having diarrhea for three days. (Tr. 726).  He reported a chronic pain score of 5 in his right hip and leg.  (Tr. 728).  However, he also reported being satisfied with his medication and declined medication adjustments or other pain management interventions.  (Tr. 728).  The hospital admitting diagnosis was "poorly controlled DM, ortho hypotension, and diarrhea."  (Tr. 734).  On February 13, 2009, in a VA progress note, Plaintiff again reported that he took insulin very infrequently - about three times a week.  (Tr. 707).  On February 20, 2009, Plaintiff reported he had no acute pain, but did have chronic pain.  Once again, however, he reported he was satisfied with his medication.  (Tr. 691). Plaintiff also reported to Dr. Heckmann on February 20, 2009, that "Generally, I feel pretty damn good."  (Tr. 695).  He noted that he still had some depression, but was not "tipping into the real serious depression."  (Tr. 695).   Dr. Heckmann diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I | Depression NOS; ptss/subsyndromal.  Cannot r/o bipolar NOS. |
| Axis II | Deferred |
| Axis III | NKDA; NIDDM/HTN/High Lipids; DJD/back pain |
| Axis IV | 3 - moderate-pain/relocation |
| Axis V | 58 in 12 months; 58 now. |

---

[8]The Court is unsure of whether this acronym refers to "no known drug allergies" or "non-ketotic diabetic acidosis."

-11-

(Tr. 698). Plaintiff advised Michael Johnson on February 20, 2009, that the medications had been helpful, and that he did not need any new medications. (Tr. 700).

On May 22, 2009, Plaintiff described to the VA very poor dietary compliance, particularly in the evenings, when he consumed a lot of high-carbohydrate foods. That same day, Plaintiff reported chronic pain in his joints, but did not desire his pain to be addressed. (Tr. 657). On May 27, 2009, Dr. Heckmann stated that the depression was in only "partial remission now on meds." (Tr. 652). On May 28, 2009, Plaintiff reported that his depression was "pretty well controlled with meds" and that he did see "someone in the MHC." (Tr. 642). He reported doing well with his depression, and his housing situation was stable. (Tr. 633).

On June 17, 2009, Plaintiff again met with Dr. Heckmann, who described Plaintiff as calm and tired, or minimally depressed. (Tr. 615). Dr. Heckman told Plaintiff he needed to avoid any ETOH use - that the underlying engine of emotional pain that led to his alcoholic career was not resolved, and that "each relapse begins with a single drink." (Tr. 617). Dr. Heckman diagnosed Plaintiff with:

| | |
|---|---|
| Axis I | Depression NOS, ptss/subsyndromal. Cannot r/o bipolar NOS, ETOH dependence in remission by history 2007 |
| Axis II | Deferred |
| Axis III | NKDA: NIDDM/HTN/High Lipids; DJD/back pain |
| Axis IV | 3 - moderate - pain/relocation |
| Axis V | 58 in 12 months; 58 now. |

(Tr. 617).

At the hearing before the ALJ, the VE testified that, based upon the hypothetical presented by the ALJ, Plaintiff would be able to perform the jobs of housekeeping light/unskilled; hand packager - light/unskilled; and meat processing - light/unskilled. (Tr.

-12-

215).

**III.  Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for

-13-

at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC).  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

## IV. Discussion

Plaintiff contends that the ALJ erred in concluding that Plaintiff failed to prove that his impairments met or equaled the requirements of Listing 12.04 (affective disorders).  Defendant argues substantial evidence supports the ALJ's determination.

### A.  Plaintiff's Mental Impairments

The Court finds there is substantial evidence to support the ALJ's finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The earliest medical record, dated April 1, 2005, reflects Plaintiff as having been diagnosed with depression.  On September 21, 2006, Dr. John Williams, a psychiatrist, assessed Plaintiff with Dysthymic Disorder, Personality Disorder NEC, Cocaine Dependence, Opiate

-14-

Abuse, and ETOH abuse.  Plaintiff began taking Celexa, and was given a GAF score of 50 at that

time.  Plaintiff was later given GAF Scores of 60, 65, 48, 56, 58.  However, Plaintiff admitted

non-compliance with his anti-depression medicine on January 31, 2007.  He later began taking

Citalopram for his depression, and on October 14, 2008, reported that his medications were most

helpful and that he was feeling good and sleeping well.  He denied any suicidal or homicidal

ideations, his attention and concentration appeared within normal limits and his insight and

judgment were considered adequate for self care.   On February 20, 2009, he was reported as

feeling "pretty damn good" and was not "tipping into the real serious depression."   He also

reported that medications had been helpful. On May 27, 2009, Dr. Heckmann reported that

Plaintiff's depression was in partial remission on medications.   On May 28, 2009, Plaintiff

himself stated that his depression was "pretty well controlled with meds" and that he was seeing

"someone in the MHC."  On June 17, 2009, Dr. Heckmann reported that Plaintiff had "very mild

depression."   Clearly, the records of Plaintiff's own treating physicians at the VA, including a

psychiatrist,  indicate that Plaintiff's mental impairment is not disabling.  In fact, Plaintiff was

approved for the Compensation Work Treatment program.

  Furthermore, the Mental RFC Assessment completed by Jane Shapiro, a psychologist,

indicates that Plaintiff was not significantly limited in 14 out of 20 categories, and was only

moderately limited in 6 out of 20 categories.  Although Plaintiff was diagnosed with depression

disorder, Dr. Shapiro found Plaintiff was able to get along with authority figures, follow verbal

and written instructions, manage his money, shop, drive,  and do household chores and simple

meal preparation.  She also found he could attend and concentrate and adapt to routine changes

in a work setting, and respond appropriately to supervision.

-15-

The Court finds there is substantial evidence to support the ALJ's finding that Plaintiff's impairments did not meet or equal the requirements of Listing 12.04.

**B. Subjective Complaints and Credibility Analysis**:

The ALJ stated the he recognized and considered Plaintiff's subjective pain and discomfort, and attempted to discharge his duty to find the nature, degree, and level of the claimant's subjective pain and other discomfort, and the functional restrictions which it imposes. He further found that Plaintiff's pain was substantiated by the record, but that Plaintiff's degree of pain relief seeking behavior and treatment was not indicative of a degree of pain that would limit activities beyond the scope of the RFC as determined in his decision.

The ALJ must make a credibility determination before discrediting Plaintiff's subjective statements of pain. Partee v. Astrue, No. 09-3570, 2011 WL 1485489, at *7 (W.D. Ark. April 20, 2011).

> "To assess [a claimant's] credibility, the ALJ [must] consider all of the evidence, including prior work records and observations by third parties, and doctors regarding daily activities, the duration, frequency, and intensity of pain, precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication, and functional restrictions." Id.,[Lowe v. Apfel, 226 F.3d 969, 971-72) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ may discredit a claimant based on inconsistencies in the evidence. See Goff, 421 F.3d at 792.

Id.

In the present case, the ALJ considered:   (1) Plaintiff's prior work record, (2) the observations by his brother and treating physicians, who did not place any functional restrictions on Plaintiff's activities that would preclude work activity within the restrictions the ALJ acknowledged, (3) and the fact that beginning in November of 2006 and continuing to 2009, Plaintiff consistently reported that the level of pain was acceptable to him and that the current

-16-

pain management did not need adjustment.   The Court believes the ALJ adequately considered the evidence before he decided that Plaintiff's subjective statements of pain were not entirely credible.

**C.   RFC Assessment:**

The ALJ found that Plaintiff had the RFC to perform light work[9] with certain limitations. RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record.  Id.  "The RFC must (1) give 'appropriate consideration to all of [the claimant's] impairments,' and (2) be based on competent medical evidence establishing the 'physical and mental activity that the claimant can perform in a work setting.'"  Id. at *8, quoting Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).  "Medical records, physician observations, and the claimant's subjective statements about his capabilities may be used to support the RFC."  Partee, at *8.  The Eighth Circuit has also held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In the present case, the ALJ considered all of Plaintiff's physical and mental

---

[9]Light work.  Light work involved lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. . . .  20 C.F.R. § 404.1567(b).

-17-

impairments., the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and his medical records, when he determined Plaintiff could perform light work with limitations. The ALJ noted that Plaintiff had been prescribed and was taking appropriate medications for his impairments, which were relatively effective in controlling his symptoms. The ALJ noted that as a result of a consultative orthopedic examination, Dr. Salvatore Milazzo concluded that Plaintiff had muscular tightness, sacroiliac dysfunction, tight hamstrings, and shoulder crepitus. However, Dr. Milazzo also noted that Plaintiff exhibited functional range of motion of his neck and lumbosacral spine and had functional motion and good strength throughout the upper and lower extremities without any signs of radiculopathy. Furthermore, a "Passive Range of Motion Chart," dated August 20, 2007, revealed that Plaintiff was able to extend both of his hands, make fists, oppose fingers, separate papers, button buttons, had normal grip and pinch strength, was able to squat, walk on heels and toes, had normal muscle weakness, could walk at a reasonable pace and did not use a hand-held assistive device. Three days later, Dr. Deogracias Bustos, in his Physical RFC Assessment, found that Plaintiff had normal range of motion of all extremities and joints, although x-ray of lumbar spine reported dextroscoliosis and degenerative joint disease. Dr. Bustos did find that Plaintiff could only frequently climb ramps and stairs and could never climb ladders, ropes, and scaffolds.

It is also worth noting that Plaintiff participated in the Compensation Work Treatment program in 2008, working the evening shift at the VA from 3:30 pm to midnight four days/week, and was excited to be working. (Tr. 599). In fact, on February 13, 2009, he was concerned about losing his job at the VA with the CWT program, since his job was going to be discontinued in April 2009.

-18-

Based on the entire evidence of record, the Court finds substantial evidence to support the ALJ's RFC findings.

**D. Hypothetical Proposed to Vocational Expert:**

The Court notes that in his first hypothetical to the VE, the ALJ asked him to assume that the individual could occasionally climb ladders and scaffolds. However, in the Physical RFC Assessment, Dr. Bustos found that Plaintiff could never climb ladders, ropes, and scaffolds. The Court is unsure what evidence the ALJ used to conclude that Plaintiff could occasionally climb ladders and scaffolds. However, a review of the requirements for the three jobs the ALJ found Plaintiff would be able to perform (housekeeping - DICOT § 323.687-014, hand packager - DICOT § 753.687-038, and meat processing - DICOT § 525.687-074), indicates that no climbing is required. Accordingly, the fact that the ALJ gave a less restrictive hypothetical regarding Plaintiff's climbing abilities is harmless. The Court finds that the hypothetical the ALJ proposed to the VE sufficiently set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). The Court therefore finds that the VE's testimony and conclusions constitute substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing other work in housekeeping and meat processing, and as hand packager. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V. Conclusion:**

Based on the foregoing, the Court affirms the ALJ's decision, and dismisses Plaintiff's

-19-

case with prejudice.

        IT IS SO ORDERED this 2nd day of May, 2011.



*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-20-